## GOODISON v NORTH AMERICAN SECURITIES CO

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided April 13, 1931

R. A. Lang, Cleveland, for Goodison.

Boer, Arnold & Tobias, Cleveland, for North American Securities Co.

LEVINE, PJ.

The case is submitted to this court upon an agreed statement of facts. A careful perusal of same discloses that the essential difference between the parties is one of law. It may be stated at the outset of our discussion that the defense of laches, as the term is generally understood in equity, was waived by counsel for the defendant.

The question of law and which in our opinion presents the dominant issue between the parties, may be. summarized in the following language: Has the plaintiff become barred from the obtaining of relief for which she prays, because of her failure to file a written objection or to otherwise claim relief under the provisions of the General Code?

The plaintiff refers the court to the articles of incorporation of the Harvard Mortgage Company and particularly to the provisions relating to preferred shares, which read as follows:

"The holders of preferred stock shall be entitled to cumulative dividends in each year at the rate of eight percent (8%) per annum, payable out of the surplus profits of said company, in preference and priority to any dividends on the common stock. Dividends, when earned, shall be payable semiannually. In the event of dissolution of the Company, the holders of preferred stock shall be entitled to preference and priority in the distribution of its assets.

"The holders of preferred stock shall not be entitled to vote at meetings of the stockholders of said company so long as dividends on the preferred stock are paid; but in case of default for two consecutive dividend periods, in the payment of such dividends, then and thereafter, during the period of such default, the holders of preferred stock may vote.

"Preferred stock is subject to redemption on or after January 1st, 1924, at one hundred ten dollars ($110.00) per share, and all accrued unpaid dividends, if any, at the option of the company."

The defendant asserts that plaintiff's exclusive remedy is under the provisions of the General Code, either that of §8713 GC et seq, which provide a method of the ascertainment of the value of stock and payment therefor to a dissenting shareholder in case of a sale of the entire assets, or under §8623-72, GC, which provides a similar method in case of such sale or a consolidation, and that in both instances written objections must be filed by the dissenting shareholder within thirty or twenty days respectively from the time of the adoption of the authorizing resolution of shareholders, and that a failure to file such objection within the time prescribed by law amounts to a waiver.

The plaintiff concedes that if she had relied upon the statutory remedy it would, of course, follow that a strict compliance with the provisions of the code is essential to the assertion of such remedy, and that a failure in that respect would prove fatal to the plaintiff's claim, as she filed no written objection within the time prescribed by law. It is asserted, however, by plaintiff that she stands squarely upon the provisions found in the articles of incorporation of the Harvard Mortgage Company relative to the rights of preferred shareholders; that the transaction which took place between the two companies amounted to a call on the plaintiff's preferred shares for redemption, and that therefore she is entitled to the redemption value of her preferred share interest as provided in said articles of incorporation. We are inclined to the view that the statutory remedy was not intended by the Legislature to constitute the exclusive remedy of a dissenting shareholder, and that if equitable grounds exist, a resort may be had to a court of equity for the enforcement of such rights as may exist in a dissenting shareholder.

The argument presented by defendant to the effect that the plaintiff is in default, and that therefore she cannot claim or assert any rights against the defendant, is not well taken, for the reason that while the subscription contracts between the plaintiff the Harvard Mortgage Company specifies the payment of forty dollars per month, yet there is in evidence a bank book which recorded a long series of payments in small installments much less than forty dollars a month and which the Harvard Mortgage Company apparently gladly accepted.

While much learning was expended by both sides in an exhaustive discussion of certain principles of law which counsel deemed applicable to this case, we are led into an additional channel of thought by a consideration of certain fundamental principles. Since the subscription contracts between the plaintiff and the Harvard Mortgage Company constitute the basis of her present claim for relief, it seems to us quite profitable that a reference be made to said contracts, and that an effort be made to determine the exact relationship existing between her and the Harvard Mortgage Company by virtue of same. These sub-

scription contracts read virtually alike, as follows:

"The Harvard Mortgage Company Subscription.

Cleveland, O., Jan. 23, 1924.
"I hereby subscribe and agree to pay 10 shares of the eight percent cumulative, redeemable, preferred stock at One Hundred Dollars ($100.00) per share, and a like number of shares of no par common stock at Four Dollars ($4.00) per share of The Harvard Mortgage Company, payable as follows: Forty Dollars ($40.00) herewith in cash, and the remainder at the rate of Twenty Dollars per month.

"Said stock certificates, preferred and common will be issued only upon full payment of this subscription. Dividends on partial payments will be allowed by the company, at the rate of eight percent per annum payable out of net profits.

"Interest will not be charged by the company on deferred installments, except on delinquencies.

"All checks must be made payable to the Harvard Mortgage Company.

"This agreement contains the entire understanding between the parties.
Witness Burger
Bus. Conn.———
(Signature) Jane B. Goodison,
(Mail Address) State Hospital"

The other subscription contract of January 1924 wherein plaintiff subscribed for an additional ten shares preferred and ten shares common stock in the Harvard Mortgage Company, reads exactly like the first contract herein set forth in full.

It will be observed that under the terms of these contracts stock certificates preferred and common will be issued only upon full payment of the, subscription price. What was the relation existing between the Harvard Mortgage Company vendor, and the plaintiff who was vendee under said contracts? While the shares of stock remained unissued, what rights, if any, in addition to the right of dividends on partial payments became vested in the plaintiff by virtue of said subscription contracts? It seems that the relationship between the Harvard Mortgage Company and the plaintiff which arose by virtue of the subscription contracts is not unlike that of a vendor and vendee under a land contract. The law in our opinion is quite settled that when the nature of the stock is such as cannot be obtained in open market and that therefore it becomes impossible to give just compensation in damages, that equity will decree specific performance to compel the issuance or transfer of stock upon the books of the corporation at the behest of a subscriber under a subscription contract. **Broad v Carpenter, 51 Oh St 83.**

Under her subscription contracts two remedies were available to the plaintiff in the event of a breach on the part of the Harvard Mortgage Company, in the same manner as to a vendee under a land contract. In the event of such breach the plaintiff would have had a right to sue the Harvard Mortgage Company for damages. She could also at her election have brought an action in equity to compel the issuance of a certificate when performance upon her part was shown. The fundamental reason for equitable assumption of jurisdiction in such a case as this is the same as in land contracts. In the case of a land contract the vendor is regarded in equity as a trustee holding the legal title to the land for the benefit of the vendee. If the vendor sells the land and disposes of same there is no question but that the vendee may at his election resort to an action in equity for an accounting. The relationship of the parties in this case is in all respects similar to that of the vendor and vendee under a land contract. A trust relationship arises by virtue of it. The Harvard Mortgage Company became a trustee holding whatever interest the plaintiff who is the vendee may have in certain shares of stock, for the benefit of such vendee. As such trustee the Harvard Mortgage Company was bound to the usual obligation to exercise the highest degree of care for the protection of the plaintiff who is a beneficiary under said arrangement. Once such trust relationship is recognized we are led to the next point.

When the plaintiff received notice of the stockholders' meeting to be held in May in order to vote upon the sale of the assets of the Harvard Mortgage Company to the North American Securities Company, or for consolidation, it received a mere gratuity, because under §8623-44, **GC,** notice need be given only to stockholders of record who are entitled to vote. The plaintiff not being a shareholder entitled to vote was not entitled to such notice and such notice is in our opinion meaningless. Had the plaintiff heeded the notice and appeared at the stockholders meeting at which the sale of assets or consolidation was voted on by the shareholders, she would have had no voice at the meeting, as only shareholders of record are entitled to vote. §86-23-50 **GC.** The appearance of the plaintiff at the meeting in pursuance of the notice which she received would have constituted a mere idle gesture.

The right to dissent or to make objection

under the statute is vested only in shareholders of record. The holder of an interest in shares of stock by virtue of a stock subscription agreement could not avail himself of the remedy provided for by the code. His dissent from the action of the stockholders who approved the consolidation or sale of assets and his objection would avail him nothing, as the statutory remedy is limited to shareholders of record only.

It is inconceivable that those having an interest in shares of stock by virtue of a stock subscription agreement were intended by law to be left without any protection whatsoever. As we view the situation such persons having an interest in shares of stock by virtue of a stock subscription agreement have a right to rely upon the vendor under the contract who is in equity regarded as their trustee, and they consequently have the right to look to such trustee for the exercise of the highest degree of care for their protection. When such vendor regarded as trustee fails in the execution of his trust by selling and disposing of the interest of the vendee, who is beneficiary under the contract and without the consent or acquiescence of such vendee, an action for an accounting would lie against the vendor as for a breach of trust.

The plaintiff in this case was under the exclusive domination and control of the Harvard Mortgage Company who, in our opinion bore a trust relationship to the plaintiff. The Harvard Mortgage Company did nothing by way of consulting with the plaintiff whether or not she is willing to enter into the new arrangement with the North American Securities Company. Without consulting her the mortgage company not only failed to protest against the new arrangement, but encouraged, promoted and brought it into being. Did the Harvard Mortgage Company exercise the highest degree of care for the protection of the plaintiff?

The action of the Harvard Mortgage Company in forcing the plaintiff into a new arrangement which would give her shares of stock for which she has not contracted and the failure of the Harvard Mortgage Company to consult the plaintiff relative to her consent or acquiescence in the new arrangement, seems to us a gross disregard of the rights of the plaintiff.

When we examine into the essence of the arrangement which the Harvard Mortgage Company approved, we find that the plaintiff upon the face of it would get approximately only forty percent of the amount of her investment. It will be noticed that for two shares of common in the Harvard Mortgage Company the stockholders became entitled to one share in the North American Securities Company. It is not straining the facts or exaggerating them to say that since the price of the common stock for which plaintiff contracted was four dollars per share, and that since the exchange agreement between the two companies provides that for two shares in the Harvard Mortgage Company the holder is to receive one share in the North American Securities Company, that the value of the North American Securities Company shares is thereby fixed in the sum of eight dollars per share. For each preferred share in the Harvard Mortgage Company the holder was entitled to only five shares in the North American Securities Company. The price of a preferred share of stock in the Harvard Mortgage Company was one hundred dollars for which the holder was to receive five shares in the North American Securities Company which represents a value in the aggregate of forty dollars. The Harvard Mortgage Company failed in its trust obligation to the plaintiff. It sought to accomplish a shrinkage of her investment which was inexcusable and in our opinion the Harvard Mortgage Company was guilty of the grossest kind of negligence and could be held accountable therefor.

The North American Securities Company absorbed all the assets of the Harvard Mortgage Company. It likewise assumed all its obligations. If there be any doubt on this latter point, we need but refer to the fact that in this very case the North American Securities Company seeks a judgment against the plaintiff on the basis of her subscription contracts with the Harvard Mortgage Company. It seeks the benefits of the Harvard Mortgage Company arising from said contracts and it thereby likewise assumes the burdens.

It follows that the action for an accounting is properly brought, and that the plaintiff is entitled to an accounting against the defendant, who is successor to the Harvard Mortgage Company, and an accounting will accordingly be ordered, and upon the ascertaining of the amount a judgment will be rendered in favor of the plaintiff in such amount found to be due. Plaintiff likewise will be held exempted and relieved from any further obligation under her subscription contracts as by the action of the Harvard Mortgage Co. to the serious injury of the plaintiff, performance of said contracts on the part of the Harvard Mortgage Company became impossible.

A decree will be ordered accordingly.

WEYGANDT, J, concurs.

VICKERY, J, not participating.